IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2002

## STATE OF TENNESSEE v. WILLIAM RAY COLLIER

**Appeal from the Criminal Court for Davidson County**
**No. 2000-C-1553      Cheryl Blackburn, Judge**

-------------------

**No. M2001-00893-CCA-R3-CD - Filed February 4, 2002**

-------------------

The Defendant, William Ray Collier, was convicted by a jury of two counts of possessing heroin with intent to sell or deliver within one thousand feet of a school, one count of possessing heroin with intent to sell or deliver, and three counts of driving on a suspended license. The trial court sentenced the Defendant to an effective term of seventy-one years. In this appeal as of right, the Defendant raises three issues: whether the trial court erred in admitting certain expert testimony; whether the evidence is sufficient to sustain his convictions; and whether his sentence is excessive. Finding no merit in any of the Defendant's contentions, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

David P. Byrne, Nashville, Tennessee, for the appellant, William Ray Collier.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 30, 1999, Officer Madeline Cunningham pulled over a Cadillac matching the description of a stolen vehicle. The Defendant was driving the car, and was alone. Officer Robert Morris assisted and determined that the Defendant was driving on a suspended license. Accordingly, he arrested the Defendant. Officer Morris then searched the Defendant, finding on his person $697 in cash and a small amount of marijuana. Officer Morris then searched the car and found a brown pill bottle under the driver's seat. The pill bottle contained nineteen small foil packets. When Officer Morris opened one of the packets he saw an off-white powder that was later determined to be heroin. Officer Morris also found a cell phone in the car, but found no drug paraphernalia either in the car or on the Defendant's person.

Officer Morris testified that the $697 in cash consisted of one $100 bill; 1 $50 bill; eighteen $20 bills; eleven $10 bills; ten $5 bills; and twenty-seven $1 bills. He also testified that drug users usually have only two to three doses in their possession at a time, no cash, and that drug paraphernalia is found with users ninety-five percent of the time. Officer Morris also explained that the stop of the Defendant was made within four hundred feet of a school.

Officer Billy Gross pulled the Defendant over on the night of September 8, 1999, because the Defendant's car had a headlight out. Officer Gross determined that the Defendant was driving on a suspended license, and arrested him. Officer Gross then searched the Defendant and found in one of his pockets a brown pill bottle. The bottle contained four foil wrappers. Officer Gross opened one of the foil packets and found a white substance which appeared, he testified, to be heroin. Officer Gross also found $250 in cash in another of the Defendant's pockets, consisting of seven $20 bills, five $10 bills, six $5 bills, and thirty $1 bills. Officer Gross found no drug paraphernalia on the Defendant. Officer Gross testified that drug users usually have only one dose of drugs on them and maybe twenty dollars.

Officer Matthew Dickson assisted Officer Gross, and searched the Defendant's vehicle. Officer Dickson found in the car a small amount of marijuana, rolling papers, and a cell phone. He found no other drug paraphernalia.

On the evening of October 25, 1999, Officer Jonathan Marklein pulled the Defendant over because his car had a rear taillight out. Officer Marklein determined that the Defendant was driving on a suspended license and arrested him. Officer Marklein then searched the Defendant and found on his person a small amount of marijuana; a pill bottle holding five foil packets containing a white powdery residue; a film canister holding twenty-four smaller foil packets containing the same white residue; and $768 in cash. The cash consisted of one $100 bill; twenty-two $20 bills; fourteen $10 bills; eleven $5 bills; and thirty-three $1 bills. When Officer Marklein searched the Defendant's vehicle, he found a cell phone and some marijuana. He found no drug paraphernalia on the Defendant or in the car. The stop was made approximately six hundred feet from a school. Officer Marklein testified that drug users generally have only one to two doses of drugs on them; about fifteen dollars; and usually have drug paraphernalia on them.

All of the foil packets confiscated from the Defendant were turned over to the TBI crime lab and determined to contain heroin.

Emmett Jenkins, owner of a bail bonding company, testified that the Defendant had arranged for bond with his company on May 30, 1999, and again on September 9, 1999.

Sergeant James McWright testified that he presided over the Twentieth Judicial District Drug Task Force and had been a police officer for twenty-nine years, working primarily on drug investigations. The trial court admitted Sgt. McWright as an expert witness in narcotics investigation. Sgt. McWright examined the foil packets recovered from the Defendant and testified that the smaller ones would sell for twenty to twenty-five dollars each, with the larger ones selling for forty to fifty dollars each. He testified that heroin addicts would normally have no more than two

to three "hits" on them, and stated that he did not believe he had "ever caught a drug junkie with over three hits of heroin." He explained that he had known users who were also sellers, and stated that, "normally they don't package what they are going to use themselves." He also testified that drug users normally have drug paraphernalia with them.

At defense counsel's request, Sgt. McWright examined the Defendant's arms outside the presence of the jury. In the jury's presence, Sgt. McWright then testified that the Defendant's arms bore scars indicating intravenous drug usage. Sgt. McWright also testified that heroin users typically injected the drug into their veins, oftentimes in their arms. Sgt. McWright also explained that heroin was very addictive.

DeWayne Whitlow testified on behalf of the Defendant, stating that he was the Defendant's step-brother. Mr. Whitlow testified that he knew the Defendant was a heroin addict, but that he never knew the Defendant to sell drugs. He stated that the Defendant worked for him sporadically and that he would not pay the Defendant his money all at once, because he was afraid the Defendant would purchase drugs with the money.

Kenneth Birdwell of the Tennessee Department of Safety testified that the Defendant's driver's license was on suspended status on May 30, 1999, September 8, 1999, and October 25, 1999.

## ADMISSIBILITY OF SGT. MCWRIGHT'S EXPERT TESTIMONY

The Defendant raises several issues concerning the trial court's decision to allow Sgt. McWright to testify as an expert witness in the area of narcotics investigations. He first contends that the trial court erred in allowing Sgt. McWright to testify as an expert witness, because he "demonstrated no superior expertise on the specific subject of his testimony, i.e., the drug heroin." The Defendant bases this claim on the fact that Sgt. McWright testified that heroin was no longer the drug of choice on the street and that his experience with it occurred primarily in the nineteen-seventies to early eighties. Initially, we note that the Defendant has waived this issue because he did not object at trial to the trial court's recognition of Sgt. McWright as an expert. See Tenn. R. App. P. 36(a). Furthermore, we find that the trial court properly concluded that Sgt. McWright qualified as an expert witness.

> Rule 702 of the Tennessee Rules of Evidence provides:
>> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Questions concerning the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the sound discretion of the trial court. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). Our standard of review, therefore, is whether the trial court abused its discretion in allowing Sgt. McWright to testify as an expert witness. See State v. Coley, 32

S.W.3d 831, 833 (Tenn. 2000). Before we can reverse the trial court for an abuse of discretion, the record must demonstrate that the trial court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)).

The trial court did not abuse its discretion in determining that Sgt. McWright was qualified to testify as an expert witness in the area of narcotics investigation. Sgt. McWright testified that he has been the sergeant over the 20th Judicial District Drug Task Force since 1988. Sgt. McWright stated that the Task Force's main focus was on "the major suppliers of the street." Prior to that assignment, Sgt. McWright worked in the Vice Control Division where he spent ninety percent of his time on narcotics investigations. His work in this area included undercover buys, executing search warrants, working with informants, and otherwise conducting "street level and mid-level drug investigations." He explained that, when he first went to work in Vice in 1975, the major drugs on the street were marijuana and heroin. Heroin continued to be the drug of choice until the early eighties when, Sgt. McWright testified, "the heroin that was being sold to the drug users [became] of such poor quality." Clearly, Sgt. McWright's work history qualified him as an expert in the area of apprehending narcotics users and dealers, even if his experience with heroin occurred primarily in years past. Given the fortunate decline in heroin usage in current times, the Defendant's objection that Sgt. McWright's knowledge is outdated could be made to any proposed expert testimony on the subject. However, we decline to hold that the mere passage of time rendered Sgt. McWright's knowledge insufficiently specialized, particularly given the similarity between his description of how heroin held for sale was packaged and the manner in which the heroin held by the Defendant was packaged. The trial court did not err in allowing Sgt. McWright to testify as an expert witness, and this issue is therefore without merit.

The Defendant also complains that Sgt. McWright's testimony did not substantially assist the jury in understanding the evidence or determining a fact in issue. We respectfully disagree. The fact at issue in this case for which Sgt. McWright's testimony was admitted was whether the Defendant possessed the heroin found on his person and in the car he was driving for his own personal use, or for sale or delivery. The Defendant's defense was that he was an addict and possessed the heroin for his own use. The State's theory was that the Defendant was holding the heroin for sale or delivery. The evidence which the jury was relying upon to make this determination included the amount of heroin recovered from the Defendant; the way in which the heroin was packaged; the amount and denominations of cash recovered from the Defendant; and the lack of drug paraphernalia recovered from the Defendant. These are facts with which, it is safe to presume, the jury was not familiar.

During his testimony, Sgt. McWright described his knowledge of how heroin is introduced into the body by users; the paraphernalia used to enable the user to inject the drug intravenously; the typical volume of a dose; and the method by which the individual doses were packaged into folded aluminum foil. He opined as to the amount of money each of the foil packets recovered from the Defendant would bring on the street. He stated that he had previously seen drugs, including heroin, carried in film canisters. He stated that, in his experience, "junkies" would have no more than two or three doses of heroin on them at any one time, and that he had "never seen cash on a heroin user

-4-

unless it was when he was on the way into a dope house [to make a buy]." When asked whether he had known heroin users who were also dealers, he testified that he had, explaining that "it's so expensive they've got to get the money from somewhere, so what they will do, they will buy a spoon or a dipper, whatever they can afford, and they will package half of it for themselves, or for resale, and keep the other but normally they don't package what they are going to use themselves." He explained further: "[T]here is a purity factor. If I'm going to buy a dipper of heroin and I am a junkie and I'm going to get off on the drugs, I'm not going to cut what I'm using. I'm going to cut what I'm selling, you know. That way, it pretty well equals out. I've got enough money to go re up, b[u]y some more drugs, and supply myself and supply somebody else, too. . . . [I]t's a way of income." Sgt. McWright also testified that, in his experience, the only commodity that dealers would take other than cash in payment for drugs was stolen merchandise. In reviewing the denominations of the cash recovered from the Defendant, Sgt. McWright testified that purchases of heroin most frequently involved twenty-dollar bills. He stated that the only time he knew of a heroin user having a similar amount of cash on his or her person would be after a robbery. Finally, Sgt. McWright testified that he had never seen someone who was purely a user have the number of individual doses recovered from the Defendant.

The State never asked Sgt. McWright whether, in his opinion, the Defendant possessed the heroin for his use or for sale or delivery. Rather, the State inquired about the officer's previous experiences with drug users and drug dealers, in an attempt to educate the jury about courses of conduct and business in the drug trade with which the jurors were, presumably, unfamiliar. That is, Sgt. McWright testified about his specialized knowledge in an area about which the jury, presumably, had little or no knowledge. This testimony was appropriate in order to substantially assist the jury to understand the significance of the evidence recovered from the Defendant upon his arrests. Accordingly, the trial court did not err in concluding that Sgt. McWright's testimony would substantially assist the trier of fact, and this issue is without merit.

The Defendant also contends that Sgt. McWright's testimony should have been excluded on the basis that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See Tenn. R. Evid. 403. The Defendant raised this objection at trial and was overruled. He now argues that Sgt. McWright's testimony "essentially presents a profile." Again, we respectfully disagree. Sgt. McWright testified about the circumstances surrounding his past investigations into heroin users and dealers. The arresting officers had far fewer years in police work than did Sgt. McWright, and none of it during heroin's heyday. Sgt. McWright was able to offer the jury a context with which to compare the evidence gathered from the Defendant, based on substantial experience with the drug and the culture around that drug. While certainly prejudicial, it was not unfairly so. Based on his experience, Sgt. McWright was also able to tell the jury that the Defendant bore scars consistent with intravenous drug usage, which supported the Defendant's theory of defense. Further, Sgt. McWright's testimony was not confusing or misleading: Sgt. McWright was clear that his current experiences with heroin were rare, and that his knowledge was based primarily on experiences in years past. Thus, the jury had the opportunity to conclude that Sgt. McWright's testimony might be somewhat limited in its current applicability. In short, we find no abuse of discretion in the trial court's determination that

the probative value of Sgt. McWright's testimony was not substantially outweighed by the danger of unfair prejudice, etc., and this issue is therefore without merit.

## II. SUFFICIENCY OF THE EVIDENCE

The Defendant next complains that the evidence is not sufficient to support his three convictions of possession of heroin with the intent to sell or deliver. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Our Criminal Code provides that "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Heroin is a Schedule I controlled substance. See id. § 39-17-406(c)(11). The Defendant contends that the evidence does not support the jury's finding that he possessed the heroin with the intent to sell or deliver it. We disagree. The evidence demonstrated that persons possessing heroin for their personal use typically carry no more than three doses on them; typically have very little cash on their persons; and typically carry the drug paraphernalia necessary to use the drug. The Defendant was arrested while carrying substantially more than three doses of heroin; the heroin was packaged in a manner consistent with being held for sale; he had large amounts of cash on his person; and he carried no drug paraphernalia. This evidence was more than sufficient for the jury to find the Defendant guilty beyond a reasonable doubt of possessing the heroin with the intent to sell or deliver it. Accordingly, this issue is without merit.

### III. SENTENCING

In his final issue, the Defendant contends that the trial court imposed an excessive sentence for his drug convictions. The jury convicted the Defendant of two counts of possessing heroin with the intent to sell or deliver within one thousand feet of a school, a Class A felony. See Tenn. Code Ann. §§ 39-17-417(b); 39-17-432(b). The trial court sentenced the Defendant as a Range I standard offender to twenty-three years on each of these convictions. The jury also convicted the Defendant of one count of possessing heroin with the intent to sell or deliver, a Class B felony. See id. § 39-17-417(b). The trial court sentenced the Defendant as a Range III persistent offender to twenty-five years on this conviction. Because the Defendant was on bail at the time he committed the second and third drug offenses, his sentences for those convictions are required to be run consecutively. See Tenn. R. Crim. P. 32(c)(3)(C). The Defendant argues that he should have been sentenced to twenty years on each of these convictions, challenging the trial court's application of mitigating and enhancement factors.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In sentencing the Defendant, the trial court applied one "heavy" enhancement factor: that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). The Defendant's record of at least eleven prior felony convictions clearly supports application of this factor. The trial court also applied one "very light" mitigating factor: that the Defendant's conduct neither caused nor threatened serious bodily injury. See id. § 40-35-113(1). The presumptive sentence for the Class

A felonies is the midpoint in the range, in this case, twenty years. <u>See</u> <u>id.</u> §§ 40-35-112(a)(1); 40-35-210(c). The sentence is then subject to being increased based on enhancement factors, and decreased based on mitigating factors. <u>See</u> <u>id.</u> § 40-35-210(e). The maximum sentence is twenty-five years. <u>See</u> <u>id.</u> § 40-35-112(a)(1). Based on its application of enhancement and mitigating factors, the trial court sentenced the Defendant to three years more than the presumptive sentence, and two years less than the maximum sentence. We see no error in the trial court's ruling.

With respect to the Class B felony, the presumptive sentence was twenty years. <u>See</u> <u>id.</u> §§ 40-35-112(c)(2); 40-35-210(c). Applying the same enhancement and mitigating factors, the trial court increased the sentence to twenty-five years, five years more than the minimum and five years less than the maximum. <u>See</u> <u>id.</u> § 40-35-112(c)(2). Again, we see no error in the trial court's ruling. Accordingly, we find the Defendant's objection to his sentences to be without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE